UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.                                                     )<br>)<br>ABDALLAH HAMDAN, ROGELIO GARCIA, )<br>a/k/a Lacuilla, a/k/a Alberto,     )<br>SILVESTRE LIZARDI, a/k/a Silvestre,)<br>GILBERTO ZAYAS, a/k/a Tony and      )<br>GIOVANNI AVILA, a/k/a Giovanni,    )<br>a/k/a The Painter, ET AL,          )<br>        Defendants,                )<br>                                    ) | **CRIMINAL ACTION<br>NO. 04-1685-CBS** |

**MEMORANDUM OF PROBABLE CAUSE AND
ORDER OF DETENTION
June 9, 2004**

**SWARTWOOD, M.J.**

I.   Nature of the Offense and the Government's Motion

On February 26, 2004, a Criminal Complaint was filed, charging multiple individuals, including Abdallah Hamdan ("Mr. Hamdan"), Rogelio Garcia, a/k/a Lacuilla, a/k/a Alberto ("Mr. Garcia"), Silvestre Lizardi, a/k/a Silvestre ("Mr. Lizardi"), Gilberto Zayas, a/k/a Tony ("Mr. Zayas") and Giovanni Avila, a/k/a Giovanni, a/k/a The Painter ("Mr. Avila") (collectively "Defendants"), with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §846.

At these Defendants' initial appearance on May 3, 2004, they were advised of their right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for a detention hearing in accordance with 18 U.S.C. §§3142(f)(1)(B)(the offense charged provides for a maximum penalty of life imprisonment),(f)(1)(C)(Defendants are charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the "Controlled Substances Act"), and (f)(2)(A)(risk of flight).

On June 1, 2004, a probable cause/detention hearing was commenced with respect to all of these Defendants  At the conclusion of the hearing, Mr. Avila assented to an Order of Detention without prejudice to his right to a detention hearing in the future; Messrs. Garcia and Lizardi were subsequently released on conditions; and Mr. Zayas' detention hearing has been continued to a later date in June 2004.

At the probable cause/detention hearing, Jean Drouin, Special Agent with the Drug Enforcement Administration ("DEA"), testified on behalf of the Government and was cross-examined by Defendants' counsel.  Kaklil Mensour, Mr. Hamdan's uncle, testified on behalf of Mr. Hamdan on the issue of his detention and was cross-examined by counsel for the Government.

II.  Findings of Fact

1.  Special Agent Drouin is the case agent in connection with an investigation concerning the distribution of multiple kilograms of cocaine in the North Shore area of Massachusetts.  This investigation commenced in January 2003 and concluded on May 1, 2004 with the arrest of more than twenty defendants.  During this investigation, Special Agent Drouin and other law enforcement officials involved in this investigation, used informants, undercover agents, global positioning systems ("GPS") on four automobiles, surveillance of individuals and locations, Department of Motor Vehicles ("DMV") photographs for identification of individuals involved in this investigation, recorded and monitored controlled purchases of cocaine and Title III wire intercepts on approximately twenty-one telephones.

2.  Primarily as a result of wire intercepts, law enforcement officials were alerted that a multi-kilogram load of cocaine was to be delivered in late April or early May 2004 to the organization which was the subject of this investigation.  Following up on these wire intercepts, law enforcement officials arrested over twenty defendants which the Government alleges were involved in a conspiracy to distribute multiple kilograms of cocaine in the North Shore of Massachusetts.  As a result of these arrests, approximately 50 kilograms of cocaine and a substantial amount of cash were seized.

3.  <u>Abdallah Hamdan.</u>  Mr. Hamdan was intercepted making numerous calls to Mr. Rosales, a Co-Defendant, for the purchase of cocaine for distribution to Mr. Hamdan's customers.  Mr. Hamdan made five controlled cocaine sales to State Police Trooper Joyce ranging from one ounce to four or five ounces.  During these controlled purchases, State Trooper Joyce wore a wire and the transactions were recorded, surveilled and in some cases, photographed.

4.  <u>Rogelio Garcia</u>.  Mr. Garcia was identified in August 2003, as a person who ran errands for Valentin Martinez, a Co-Defendant and alleged leader of this conspiracy, including the collection of drug proceeds.  On August 3, 2003, as a result of wire intercepts involving Messrs. Rosales, Martinez and Garcia, Mr. Garcia confirmed that he had a kilogram of cocaine and Mr. Rosales, on instructions from Valentin Martinez, went to Mr. Garcia's residence at 46 Wyman Street, Lynn, Massachusetts to meet with Mr. Garcia and to dilute Mr. Garcia's 1 kilogram of cocaine into 2 kilograms of cocaine.  <u>Id.</u>

5.  <u>Silvestre Lizardi</u>.  Mr. Lizardi was intercepted making numerous calls to Mr. Rosales in which Mr. Lizardi made arrangements for purchasing quantities of cocaine and/or delivering money to Mr. Rosales in payment for cocaine.  Mr. Lizardi was intercepted calling Mr. Rosales in early November of 2003 to make arrangements for the purchase and sale of a kilogram of cocaine.

6.  <u>Giovanni Avila</u>.  Mr. Avila was intercepted making numerous telephone calls to Valentin Martinez and Mr. Rosales concerning the sale of cocaine.  On September 13, 2003, intercepted calls between Messrs. Martinez, Rosales and Avila confirmed that a kilogram of cocaine was delivered to Mr. Avila at his place of business in Lynn, Massachusetts.

7.  <u>Gilberto Zayas</u>.  Mr. Zayas was intercepted on the telephone numerous times speaking with Valentin Martinez, Mr. Rosales and Mr. Madera.  Mr. Zayas' prime responsibility was running errands for Valentin Martinez.  In September 2003, Mr. Zayas had delivered cocaine to Florida and on the return trip to Massachusetts, was stopped by the police in North Carolina who discovered, by use of a drug sniffing canine, the presence of a "hide" contained in the automobile then being driven by Mr. Zayas.

### III.  Probable Cause

From the wire intercepts and surveillance of these Defendants, I find that: Mr. Hamdan was a customer purchasing cocaine from the Martinez' organization, who then subsequently sold cocaine in smaller amounts to his customers and was recorded and surveilled making five controlled sales of cocaine to an undercover state trooper; Mr. Garcia was involved with Mr. Rosales and Valentin Martinez in the role of running errands in furtherance of this conspiracy, including the diluting of one kilogram of cocaine into two kilograms of cocaine and the collection of proceeds of drug sales; Mr. Lizardi was intercepted calling Mr. Rosales in early

November 2003 making arrangements for purchase and sale of a kilogram of cocaine; Mr. Avila was intercepted on numerous occasions making arrangements with Valentin Martinez and Mr. Rosales for the purchase of cocaine and in September of 2003, was involved in the purchase of a kilogram of cocaine from Valentin Martinez and Mr. Rosales; and Mr. Zayas was intercepted on many occasion running errands for Valentin Martinez and made deliveries of cocaine for Mr. Martinez to as far away as Florida. Therefore, I find that there is probable cause for the offense charged against these Defendants in this Complaint.

## IV. The Bail Reform Act

### A. Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e). The Supreme Court, in United

States v. Salerno, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Id. at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight. See 18 U.S.C. § 3142 (f); United States v. Jackson, 823 F.2d 4-5 (2d Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). See also United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

  The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. See 18 U.S.C. § 3142 (f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice. 18 U.S.C. § 3142(f)(2). Second, the

judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release. See United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the

Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary. <u>United States v. Jessup</u>, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including:

   a. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   b. whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

>   (4)   the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

>   V.   <u>Discussion of Whether Detention is Warranted</u>
>
>       A.   <u>Mr. Hamdan's History and Characteristics</u>

Mr. Hamdan is twenty-eight years old and was born in Israel. Mr. Hamdan entered the United States on a student visa in 1996 when he attended a college in Texas for six months studying English and at the end of 1996, attended Bunker Hill Community College. Upon completion of his course of study at Bunker Hill Community College, Mr. Hamdan transferred to University of Massachusetts, where he remained a student until 2000 when he returned to Israel for a year. Mr. Hamdan then returned to the United States in 2001 on another student visa, but he experienced problems in completing his college courses and has not attended college since 2001.

Mr. Hamdan is single and has no children. Mr. Hamdan's parents reside in Israel along with four of his siblings. Another sibling resides in Denmark where numerous aunts and uncles reside. Mr. Hamdan has an uncle, Kaklil Mensour, who lives in Boston and with whom Mr. Hamdan has resided at various times including most recently and when he first came to the United States. Mr. Mensour owned a Dollar Store in the Boston area for approximately twelve years and has sold that business and is presently employed by one of the Boch automobile agencies in Norwood, Massachusetts. Mr. Mensour is a naturalized United States citizen. At the detention

hearing, Mr. Mensour testified that he would be willing to act as a third-party custodian, but he also admitted that he had strongly advised his nephew to return to Israel after he left college, and that he would like to see his nephew return to Israel as soon as possible.

While in the United States, Mr. Hamdan has relied upon his family for support.

In July 2002, Mr. Hamdan was charged with possession of a controlled substance with intent to distribute which was continued without a finding to October 21, 2004. Defs. Ex. A. Mr. Hamdan has two other minor traffic violations which are of no consequence on the issue of detention.

B. Nature of the Offense and Weight of the Evidence

I have previously found probable cause for the offense charged against Mr. Hamdan in this Complaint. Mr. Hamdan has been intercepted on numerous occasions ordering cocaine from Mr. Rosales and on five separate occasions was recorded, surveilled and on some occasions, photographed selling cocaine to an undercover state trooper. Therefore, I find that the weight of the evidence against Mr. Hamdan is substantial.

C. Rebuttable Presumption

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), (f)(1)(C) and (f)(2)(A). The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the

community if Mr. Hamdan were released, or the appearance of Mr. Hamdan as required.

The rebuttable presumption created by 18 U.S.C. § 3142(e) applies in this case, because Mr. Hamdan is charged with a drug offense for which a maximum penalty of ten years or more is prescribed in the Controlled Substances Act.  I have found probable cause exists for the offense charged against both Mr. Hamdan in the Complaint.  Therefore, I find that under 18 U.S.C. §3142(e), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Mr. Hamdan or the safety of the community if he were released.  I find that  Mr. Hamdan has not produced nor proffered any credible evidence on his own behalf to rebut this presumption.  Without such evidence, the presumption alone may justify detention.  <u>United States v. Alatishe</u>, 768 F.2d 364, 371 (D.C. Cir. 1985); <u>United States v. Vires</u>, 637 F. Supp. 1343, 1351 (W.D.Ky. 1986).  Although I have determined that Mr. Hamdan has failed to rebut the presumption, for the sake of completeness, I will examine the Government's assertion that he poses a danger to the community and a risk of flight.

D.  <u>Burden of Proof</u>

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), (f)(1)(C) and (f)(2)(A).  The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the

community if Mr. Hamdan were released, or the appearance of Mr. Hamdan as required.

The Government's burden of proof is by:

1. *Clear and convincing evidence* that Mr. Hamdan, if released, would pose a serious danger to any person or the community, or

2. A *preponderance of the evidence* that Mr. Hamdan, if released, would not appear as required.

   E. <u>Whether Mr. Hamdan Poses A Danger to the Community</u>

Mr. Hamdan's alleged involvement with the cocaine conspiracy charged in this Complaint was primarily in 2003 and early 2004 which is during the period that Mr. Hamdan's state drug offense remained pending. Therefore, considering Mr. Hamdan's prior involvement in possessing a controlled substance and the fact that Mr. Hamdan became involved in this conspiracy during the period that his state offense was pending, albeit without a finding of guilty, I find by clear and convincing evidence that Mr. Hamdan poses a danger to the community and that there are no conditions or combination of conditions that I can impose that will assure the safety of any person or persons in the community if he were released.

   F. <u>Whether Mr. Hamdan Poses A Risk Of Flight</u>

Mr. Hamdan was allowed to re-enter the United States on a student visa but shortly after arriving to attend college, he left

college and his right to remain in the United States is questionable. Although I find that Mr. Mensour is a responsible United States citizen, I do not find that he would be an appropriate third-party custodian since he had earlier strongly advised his nephew, Mr. Hamdan, to return to Israel. While in the United States, Mr. Hamdan has relied on his family for financial support and it is clear from Mr. Mensour that Mr. Hamdan's parents also want him to return to Israel and they appear to have the financial resources to assist Mr. Hamdan if he were to leave the United States. Additionally, if Mr. Hamdan is found guilty of the cocaine conspiracy charged in this Complaint, he faces a substantial period of incarceration followed by immediate deportation. Therefore, Mr. Hamdan would have no incentive to remain in the United States to defend these charges. Considering the totality of these circumstances, I find by a preponderance of the evidence that Mr. Hamdan poses a risk of flight and that there are no conditions or combination of conditions that I can impose to assure his appearance in Court as required.

VI.   Order of Detention Pending Trial

In accordance with the foregoing memorandum, IT IS ORDERED:

1.   That Messrs. Hamdan and Avila be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.   That Messrs. Hamdan and Avila be afforded a reasonable opportunity for private consultation with counsel; and

3.   On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Messrs. Hamdan and Avila are detained and confined shall deliver Messrs. Hamdan and Avila to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

RIGHT OF APPEAL

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

/s/Charles B. Swartwood, III
CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE